UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE C. MCPHERSON,

    Plaintiff,                          Civil Action No. 15-12010

        v.                           District Judge John Corbett O'Meara
                                      Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    Plaintiff Nicole C. McPherson ("Plaintiff"), proceeding *pro se,* brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #15] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #14] be DENIED.

## PROCEDURAL HISTORY

On July 31, 2012, Plaintiff applied for DIB and SSI, alleging disability as of June 15, 2009 (Tr. 115-120, 121-124). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on November 18, 2013 in Oak Park, Michigan (Tr. 26). Administrative Law Judge ("ALJ") Gerald A. Freedman presided. Plaintiff, unrepresented, testified (Tr. 31-44), as did Vocational Expert ("VE") Scott Silver (Tr. 44-49). On February 12, 2014, ALJ Freedman found that Plaintiff was not disabled (Tr. 20-22). On May 8, 2015, the Appeals Council denied review (Tr. 1-5). Plaintiff filed the present action on June 2, 2015.

## BACKGROUND FACTS

Plaintiff, born September 30, 1971, was 42 at the time of the administrative decision (Tr. 22, 115). She completed 12th grade and worked previously as a cashier (Tr. 146). She alleges disability as a result of rectal bleeding, hypertension, left-sided hearing loss, and back and knee problems (Tr. 145).

### A.     Plaintiff's Testimony

*The ALJ prefaced Plaintiff's testimony by amending the alleged onset date to July 26, 2012* (Tr. 28). *He noted that Plaintiff had filed for disability benefits a total of eight times and had lost the first seven times* (Tr. 29). *Plaintiff waived her right to legal representation* (Tr. 30).

Plaintiff then offered the following testimony:

She stood 5' 4" and weighed more than 250 pounds (Tr. 31). Her son was 17 (Tr. 31). She had not taken college classes or received vocational training (Tr. 32). She had not worked since being terminated from a job at WalMart three years earlier due to knee and low back problems (Tr. 32-35). Due to her physical condition, she became fatigued even waiting for a bus (Tr. 33). Her treatment had been limited to therapy and steroid injections (Tr. 34). She also experienced left-sided hearing loss and hypertension (Tr. 35). She had been told that the hearing loss was not treatable (Tr. 35). She took Naproxen and Hydrocodone for the back condition and Itinerol for hypertension (Tr. 36). Her treating sources currently suspected a diagnosis of Lupus (Tr. 37).

Plaintiff was unable to walk even one city block due to back and knee problems (Tr. 38). She experienced difficulty climbing a flight of stairs (Tr. 38). She was unable to lift anything with her left hand due to an injury and was limited to lifting one gallon of milk with the right (Tr. 39). Although she used a CPAP machine and took sleeping medicine, she experienced daytime sleepiness (Tr. 40). She relied on her son to perform household chores (Tr. 41-42). She did not have a driver's license and had been driven to the hearing by her mother (Tr. 42).

Plaintiff admitted that she could perform the sedentary job of bench inspector,[1] but

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and

did not know if she was capable of obtaining transportation to work (Tr. 43).

### B. Medical Evidence

#### 1. Records Related to Plaintiff's Treatment[2]

December, 2008 treatment records by Dr. Jean Sinkoff note Plaintiff's report of right knee weakness (Tr. 182). Plaintiff reported that she was currently working as a cashier (Tr. 182). Dr. Sinkoff referred her for physical therapy (Tr. 183). January, 2009 records note that Plaintiff experienced some improvement with physical therapy, but currently reported level "10" pain on a scale of 1 to 10 (Tr. 180). She requested a different knee brace (Tr. 180). A CT of the right knee showed degenerative arthritis and joint effusion (Tr. 177). In March, 2009, Dr. Sinkoff administered a steroid injection to the right knee (Tr. 177). Plaintiff reported that she took Vicodin on an as-needed basis (Tr. 176).

In August, 2011, Plaintiff was diagnosed with hemorrhoids (Tr. 206). December, 2011 records noted a diagnosis of sleep apnea (Tr. 194, 196-197, 202). Treatment records note "no acute respiratory distress walking to the clinic" and that Plaintiff's insomnia and daytime malaise were improved with the use of a CPAP device (Tr. 202). A February, 2012 ultrasound of the thyroid was negative for malignancy (Tr. 240). March, 2012 records note

---

that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

[2]Medical records created prior to the alleged onset date of July 26, 2012 are included for background purposes only.

Plaintiff's report that she felt "much better" and "more refreshed" since beginning the use of a CPAP device (Tr. 187). April, 2012 treating records state that a colonoscopy performed in September, 2011 was unremarkable (Tr. 184). Treating notes also state that Plaintiff's thyroid hormone levels were normal (Tr. 241). July, 2012 records note a full range of left elbow motion (Tr. 186).

In January, 2013, Dr. Sinkoff treated Plaintiff for bronchitis (Tr. 235). Imaging studies of the chest from the same month showed "borderline heart size" but no other abnormalities (Tr. 234). Dr. Sinkoff's March, 2013 records state that Plaintiff sought treatment for an ear ache (Tr. 229). An April, 2013 x-ray of the left shoulder showed mild degenerative changes with rotator cuff tendinitis (Tr. 232). In May, 2013, Plaintiff sought emergency treatment for arm pain (Tr. 224). She was prescribed Motrin 800 and discharged without a diagnosis (Tr. 224-225). The following month, she reported chest pain during physical activity (Tr. 230). July, 2013 treating notes state that Plaintiff experienced bronchitis and reported knee pain (Tr. 230). Dr. Sinkoff prescribed Benadryl and an antibiotic (Tr. 230).

### 2. Non-Treating Records

In December, 2013, Ernesto Bedia, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's complaints of back and right knee pain since 1996 (Tr. 208). Plaintiff also reported daily rectal bleeding, sleep apnea, and left-sided hearing loss (Tr. 209). Dr. Bedia noted that a colonoscopy yielded normal results (Tr. 208). The back

examination and neurological testing were unremarkable (Tr. 209, 215). Dr. Bedia noted full muscle strength, normal hearing, and a normal gait (Tr. 209-210). X-rays of the lumbar spine and bilateral knees showed "minimal" degenerative changes (Tr. 211-212). Range of motion studies were normal (Tr. 213-214).

Dr. Bedia also completed an assessment of Plaintiff's work-related abilities, finding that she could lift or carry up to 20 pounds frequently and 50 pounds occasionally (Tr. 217). He found that Plaintiff could sit for six hours a day, stand for five, and walk for four (Tr. 218). He found that Plaintiff was capable of reaching, handling, fingering, feeling, push/pulling, and operating foot controls on a frequent basis (Tr. 219). He precluded the climbing of ladders and scaffolds but found that Plaintiff could climb stairs, balance, stoop, kneel, crouch, and crawl on a frequent basis (Tr. 220). He found no limitation in vision or hearing (Tr. 220). He precluded Plaintiff from working at unprotected heights but found that she could operate a motor vehicle and work with environmental changes on a frequent basis (Tr. 221). Dr. Bedia found that Plaintiff could work with moving mechanical parts on an occasional basis (Tr. 221). He found that Plaintiff did not require the use of a cane and could use public transportation (Tr. 222).

### 3. Records Submitted After the ALJ's February 12, 2014 Decision (Tr. 242-243)

A February 17, 2014 "Medical Needs - Path" signed by Dr. Sinkoff states that Plaintiff was unable to perform any work (Tr. 242). Dr. Sinkoff found that Plaintiff experienced hypertension and breathing problems and was unable to lift even 10 pounds on

an occasional basis (Tr. 242). Incosistently, Dr. Sinkoff found both that Plaintiff was unable to stand or walk for even two hours in an eight-hour workday *and* could stand/walk for about six hours in an eight-hour workday (Tr. 242). An unsigned assessment faxed to an SSA office on February 13, 2014 states that due to vascular necrosis of the elbow and cervical and lumbar disc disease, Plaintiff was limited to lifting less than 10 pounds occasionally and standing/walking for two hours in an eight-hour workday (Tr. 243).

### C. Vocational Expert Testimony

VE Scott Silver classified Plaintiff's former work as a cashier as unskilled at the light level of exertion (Tr. 45).

The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

> [Sedentary . . . work with lifting five pounds on a frequent basis, 10 pounds at the maximum level. She would have to have a sit/stand option, based upon her own physical needs, provided with the customary breaks of 15 minutes every two hours, and a 30 to 45 minute break at lunch time. Could she perform her past relevant work, with these conditions? (Tr. 45).

In response, the VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for work as a surveillance monitor (1,000 jobs in the local economy); sorter (1,700); and telephone information clerk (1,300) (Tr. 45, 47-48). He testified further that if Plaintiff's allegations of limitations were fully credited, she would be unable to perform any work due to daytime sleepiness, left-sided hearing loss, distractions from constant pain, and knee instability (Tr. 46). The ALJ closed the hearing by ordering a

consultative examination and requesting updated information from Plaintiff's treating physician (Tr. 50-51).

**D. The ALJ's Decision**

The ALJ began his opinion by noting that he was bound by a prior June 22, 2010 decision, barring new and material evidence of a change in Plaintiff's condition (Tr. 10-11, 68-83)(*citing Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997); Acquiescence Ruling 98-4(6)). Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "morbid obesity; obstructive sleep apnea; degenerative changes in the left shoulder and elbow; bronchitis/chronic obstructive pulmonary disease; arthralgia and osteoarthritis changes of the knees; degenerative osteoarthritis changes in the lumbar spine; and hypertension" but that none of the conditions met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 13-14). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work allowing her "to alternate between sitting and stand as she deems necessary throughout the day" (Tr. 16). Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her past relevant work, she could work as a surveillance monitor, assembler, or sorter (Tr. 21).

The ALJ discounted Plaintiff's allegations of disability, noting that her claims of limitation were undermined by "consistently benign clinical presentation, isolated complaints, and [the] lack of remarkable findings with radiographic evidence" (Tr. 19). He

noted that while Plaintiff claimed that she had not worked since 2010, "her earnings records reveal that she worked as a home health aide throughout 2013" (Tr. 20). He noted that Plaintiff had not received treatment from Dr. Sinkoff since July, 2013 (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff, proceeding *pro se*, submits that she is unable to work due to neck, foot, elbow, knee, and leg pain; lower extremity swelling; and incontinence. *Plaintiff's Brief,* 2, *Docket #14*; *Reply, Docket #16.*

-10-

### A. Acquiscence Ruling 98-4(6)

ALJ Freedman found that Plaintiff's condition had not materially worsened since the June 22, 2010 decision by another ALJ (Tr. 10-11, 68-83). ALJ Freedman found that he was bound by the earlier findings under Acquiscence Ruling ("AR") 98-4(6), which states that in the absence of new and material evidence postdating an earlier decision under the same Title, the later fact-finder *must* adopt the previous RFC. (emphasis added). 1998 WL 274052 (June 1, 1998)(*codifying Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997)).

ALJ Freedman did not err in finding that Plaintiff's condition had not worsened since the previous decision. In order to be awarded benefits subsequent to the original finding of non-disability, a claimant "must demonstrate that her condition has so worsened . . . that she was unable to perform substantial gainful activity." *Priest v. Social Security Admin*, 3 Fed.Appx. 275, 276, 2001 WL 92121, *1 (6th Cir. January 26, 2001)(citing *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1232-33 (6th Cir.1993)). The ALJ noted that while Dr. Sinkoff recorded Plaintiff's report of "generic back pain" on one occasion, the treating records did not include clinical examination findings related to the condition (Tr. 17). The ALJ observed that although Plaintiff reported left elbow pain, she demonstrated a normal range of motion and no swelling (Tr. 17). He noted that while Plaintiff complained of shortness of breath in April, 2013, a physical examination and imaging studies were essentially unremarkable (Tr. 18). He noted that Dr. Sinkoff did not recommend specialized

treatment for the alleged back and knee conditions (Tr. 18). The ALJ also noted that Plaintiff did not seek any treatment after July, 2013 (Tr. 18).

As discussed by the ALJ, Dr. Bedia's consultative findings of no pulmonary rales or lower extremity swelling also stand at odds with Plaintiff's claims of limitation (Tr. 18, 209-212). The ALJ noted that Plaintiff demonstrated a normal gait and range of motion (Tr. 19, 209-210, 213,-214). He reasonably found that Plaintiff's claims of extreme physical limitation were undermined by her ability to perform some work as a home health aide in 2013 (Tr. 20). The ALJ also considered Plaintiff's obesity in crafting the RFC for sedentary work (Tr. 15) under SSR 02–1p, which requires an ALJ to perform an assessment of the impact of the claimant's obesity on his or her functional abilities. 2002 WL 34686281 (September 12, 2002).

### B. Evidence Submitted After the Administrative Opinion

I have also considered whether the material submitted after the ALJ's February 14, 2014 decision provides grounds for remand (Tr. 5, 242-243).

Where the Appeals Council denies a claimant's request for a review of an application based on new material (Tr. 5), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696–696 (6th Cir.1993). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there

is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...." As such, this Court may consider the newer evidence only for purpose of determining whether remand is appropriate under the sixth sentence of § 405(g).

Even assuming that Plaintiff could provide "good cause" for the failure to submit the newer evidence prior to the administrative decision, she cannot show that it is "material" to the ALJ's decision. To show that the newer evidence is material, the claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir.1988). The February 17, 2014 assessment signed by Dr. Sinkoff states that Plaintiff was unable to perform any work (Tr. 242). The assessment states further that Plaintiff experienced hypertension and breathing problems and was unable to lift even 10 pounds on an occasional basis (Tr. 242).

An opinion of limitation by a treating source is generally entitled to deference. *See Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)("[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight"). As such, under some circumstances, a treating opinion of limitation pertaining to a claimant's condition for the relevant period would satisfy the materiality requirement for remand under the sixth sentence of 405(g).

Nonetheless, Dr. Sinkoff's one-page assessment does not provide grounds for remand. First, Dr. Sinkoff's statement that Plaintiff was unable to perform any work is not entitled to any deference. The Commissioner, not a treating source, is responsible for deciding whether a claimant meets "the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). While a treating source opinion regarding a claimant's *medical condition* is entitled to deference, the SSA "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." § 404.1527(d)(3)(emphasis added).

Second, as noted by the ALJ, Plaintiff did not receive treatment from Dr. Sinkoff or any source after July, 2013. While Dr. Sinkoff's found that "control of hypertension" and "breathing" problems contributed to the disability, none of the treating or consultative records support the conclusion that the conditions "can be expected to last for a continuous period of not less than 12 months" as required by 42 U.S.C. §423(d)(1)(A) for a disability finding. While Plaintiff received treatment for bronchitis in January and July, 2013 (Tr. 230, 235), records created in the interim show that she did not experience the condition continuously (229). Dr. Sinkoff's April, 2013 records specifically state that Plaintiff's "lungs [were] clear" (Tr. 230). In December, 2013, Dr. Bedia noted "no crackles or wheezes" or the need for environmental restrictions due to lung problems (Tr. 209, 221). His finding that Plaintiff experienced only "mildly elevated" blood pressure (Tr. 210) is consistent with the treating records (Tr. 230). None of the evidence supports the finding that Plaintiff experienced disabling lung conditions or hypertension continuously for at least 12

months.

Third, Dr. Sinkoff's disability opinion is undermined by internal inconsistencies. Most confusingly, she found that Plaintiff was unable to stand or walk for even two hours in an eight-hour workday or stand or walk for at least two hours, *and* that she could stand/walk for about six hours in an eight-hour workday (Tr. 242). Dr. Sinkoff also found both that Plaintiff could "sit less" than six hours *and* "sit about six hours" in an eight-hour workday (Tr. 242). While Plaintiff also submitted an assessment on February 13, 2014 stating diagnoses of vascular necrosis of the elbow and cervical and lumbar disc disease, it is unsigned by a medical source (Tr. 243) and thus not entitled to any weight. Moreover, the unsigned assessment states that Plaintiff is capable of performing work limited to occasional lifting of 10 pounds (Tr. 243). The unsigned document is not inconsistent with the RFC for sedentary work found in the administrative decision (Tr. 16). For these reasons, a Sentence Six remand for review of the new evidence is not warranted.

After considering Plaintiff's motion and reviewing the transcript for other possible grounds for remand, I conclude that the the ALJ's decision is well within the "zone of choice" accorded the administrative fact-finder and thus, should not be disturbed by this Court. *Mullen supra,* 800 F.2d at 545.

## CONCLUSION

For the above-stated reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #15] be GRANTED, and that Plaintiff's Motion for Summary Judgment

[Docket #14] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 21, 2016                         s/R. Steven Whalen
                                             R. STEVEN WHALEN
                                             UNITED STATES MAGISTRATE JUDGE

<a>
</a>

<b></b>

## CERTIFICATE OF SERVICE

     I hereby certify on June 21, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants June 21, 2016.

                                      s/Carolyn M. Ciesla
                                      Case Manager for the
                                      Honorable R. Steven Whalen